HEADNOTE: R.J.REYNOLDS v. STIDHAM (NO. 77, SEPT TERM. 2015)

FIFTEEN MONTHS AFTER FILING SUIT AGAINST ASBESTOS DEFENDANTS, AFTER MOST OF THE DEADLINES SET IN A SCHEDULING ORDER FOR COMPLETION OF DISCOVERY AND NAMING OF WITNESSES HAD PASSED, PLAINTIFFS FILED AN AMENDED COMPLAINT JOINING SEVERAL TOBACCO COMPANIES ON A THEORY OF SYNERGY – THAT THEIR LUNG CANCER WAS CAUSED BOTH BY SMOKING AND EXPOSURE TO ASBESTOS. THE CIRCUIT COURT DISMISSED THEM AS BEING IMPROPERLY JOINED ON THE SPECIAL ASBESTOS DOCKET BUT WITH LEAVE TO REFILE THE CASE ON THE GENERAL CIVIL DOCKET; SIXTEEN MONTHS LATER AFTER ALL CLAIMS AGAINST ALL OF THE ASBESTOS DEFENDANTS HAD BEEN RESOLVED, PLAINTIFFS MOVED TO REINSTATE THE TOBACCO COMPANIES IN THE ASBESTOS CASE. THE COURT DENIED THE MOTION, AND PLAINTIFFS APPEALED. THE COURT OF SPECIAL APPEALS DISMISSED THE APPEAL AS MOOT, BUT DECIDED TO DISCUSS THE MERITS ANYWAY.


COURT OF APPEALS HELD:

    (1) THERE WAS A FINAL JUDGMENT IN THE CASE;
    (2) THE APPEAL WAS MOOT, AS THERE WERE NO LONGER ANY ASBESTOS DEFENDANTS LEFT TO BE JOINED WITH.
    (3) THE COURT OF SPECIAL APPEALS DID NOT ERR IN ADDRESSING THE MERITS FOR GUIDANCE IN FUTURE CASES, BUT THE COURT OF APPEALS, HAVING TAKEN THE CASE, GAVE ITS OWN GUIDANCE REGARDING THE PROPRIETY OF JOINING ASBESTOS AND TOBACCO COMPANIES IN A SINGLE ACTION.

.

IN THE COURT OF APPEALS

OF MARYLAND

No. 77

September Term, 2015

R.J. REYNOLDS TOBACCO CO., et al.

vs.

DOUGLAS A. STIDHAM, etc., et al.

Barbera, C.J.
Greene
McDonald
Harrell, Glenn T. (Retired, Specially
                    Assigned)
Battaglia, Lynne A. (Retired, Specially
                    Assigned)
Raker, Irma S. (Retired, Specially
                    Assigned)
Wilner, Alan M. (Retired, Specially
                    Assigned),

JJ.

Opinion by Wilner, J.
McDonald, J., dissents in part

Filed: July 5, 2016

This case is another attempt by plaintiffs with lung cancer to join in one action claims against both asbestos and tobacco defendants on the premise that their cancers arose from exposure to the products of both sets of defendants – that the cancers were caused by both smoking cigarettes and exposure to asbestos. As it had done before in other cases, the Circuit Court for Baltimore City refused to permit the joinder of the two sets of defendants on the special asbestos docket maintained by the court.

The issues in this appeal are largely procedural ones: whether there is a final judgment in the case; whether the plaintiff's appeal, in any event, is moot and should be dismissed on that ground; if the appeal is not moot, whether the Circuit Court erred or abused its discretion under Md. Rule 2-212 in denying joinder of the two sets of defendants; and, even if the appeal **is** moot, whether the Court of Special Appeals erred in addressing the joinder argument made by the plaintiff for guidance of the Circuit Court in other pending cases where joinder may be sought. We shall conclude:

(1) There is a final judgment in the case;

(2) The appeal, however, is moot and should be dismissed on that ground; and

(3) The Court of Special Appeals did not err in expressing its views on the joinder issue for the guidance of the lower court in other cases, but, now that the case is before us, we shall do so.

## BACKGROUND

### The Asbestos Docket in Baltimore City

Much has been written about the avalanche of asbestos cases that began overwhelming courts throughout the country in the 1970s, and there is no need for us to repeat it all.[1]  Suffice it to say that the Circuit Court for Baltimore City was, and continues to be, especially hard hit, in large part because of the shipbuilding industry that flourished in and around the City during and after World War II, in which asbestos products were stockpiled and commonly used.[2]  In *ACandS v. Godwin*, 340 Md. 334, 342, 667 A.2d 116, 119 (1995), this Court noted that, in September 1987, 1,000 asbestos cases had already been filed in that court, that by 1990, more than 4,900 such cases had been filed, and it was expected that 50 additional cases would be filed **each week**.  This Court's Standing Committee on Rules of Practice and Procedure heard testimony in 1995

---

[1] *See* Stephen J. Carroll, et al., *Asbestos Litigation* 22 (2005), *available at* http://www.rand.org/content/dam/rand/pubs/monographs/2005RASND_MGI162; Paul D. Carrington, *Asbestos Lessons: The Consequences of Asbestos Litigation*, 26 Rev. Litig. 583, 589 (2007); Deborah R. Hensler, *As Time Goes By: Asbestos Litigation After Amchem* and *Ortiz* 80 Tex. L. Rev. 1899 (2002); Linda S. Mullenix, *Beyond Consolidation: Postaggregative Procedure in Asbestos Mass Tort Litigation*, 32 Wm. and Mary L. Rev. 475 (1991), all cited in Eduardo C. Robreno*, The Federal Asbestos Product Liability Multidistrict Litigation (MDL-875): Black Hole or New Paradigm*, 23 Widener L. Rev. 97 (2013).   By 1991, it was estimated that 715,000 asbestos cases were pending in the State and Federal courts throughout the country.  *Id. Robreno, supra* at 106.

[2] During the war, the Navy became the country's largest consumer of asbestos.  It is estimated that approximately 4.5 million shipyard workers may have been exposed to asbestos fibers.  Eduardo Robreno, *supra,* n.1 at 102.

that 10,000 cases were then pending. It is currently estimated that approximately 30,000 asbestos cases are pending in the Circuit Court for the City.

These cases presented at least three major problems. First, of course, was the sheer volume. They are almost always jury cases; how can one court, with ever-increasing criminal, juvenile, and domestic dockets, deal in a proper and timely manner with such a volume? Second, they are complex product liability cases, with myriads of derivative claims – cross-claims, counter-claims, and third-party claims – presenting issues not just of liability to the plaintiffs but of contribution and indemnity. They can take, and have taken, weeks or months to try. As we pointed out in *Godwin, supra,* 340 Md. at 342, 667 A.2d at 119-20, if, as anticipated in the Circuit Court's 1990 case management plan, two judges would be designated to try ten consolidated plaintiffs' actions at a time, one batch per judge each month, by the end of the century new filings would be ten times greater than the number of cases tried.

The third problem was that, in the great majority of these cases, the plaintiff, though perhaps able to demonstrate some biological effect from exposure to asbestos products, had yet to suffer any symptoms, any serious illness.[3] In order to avoid a problem with the statute of limitations, the cases needed to be filed because some injury had occurred, but they might not be ready to try for many years and there remained the

---

[3] Mesothelioma reportedly has a long latency period. Symptoms may not become diagnosable for 30 years or more. *See Asbestos Injury Litigation*, 60 Am.Jur.Trials 73 §6 (1996).

3

real prospect of dismissal under Md. Rule 2-507 for inactivity. The combination of these problems tended to make these cases unique.

Like courts elsewhere, the Circuit Court tried a number of innovative techniques in an attempt to break the logjam, including an effort at global settlements through court-annexed mediation. None of those techniques cured the problem, or even made much of a dent in it. In 1990, the court made plans to consolidate 8,555 pending actions for trial on certain common issues – whether the defendants manufactured, sold, distributed, or installed defective products, whether they violated a duty to warn of dangers inherent in the products, and whether they could be liable for punitive damages. The cases of six of those plaintiffs would be tried on all issues except derivative claims, which were reserved for a later consolidated trial. With respect to the other 8,549 plaintiffs, if the verdicts on the common issues permitted a finding of liability, absent settlements, further trials would be necessary in each of those cases to resolve issues personal to the particular plaintiffs. The major consolidated trial lasted six months. The judgments entered in that case were appealed and resolved by this Court in *Godwin*. So-called "mini-trials" on the individual issues then ensued.

In the meanwhile, new cases were pouring in. Between 1990 and 1993, an additional 1,300 new asbestos cases were filed. Those cases were consolidated for trial on common liability issues arising from them and on the derivative claims that had been severed from the first consolidated trial. The second consolidated trial lasted eight months. The appeal took another seven years. *See ACandS v. Abate*, 121 Md. App. 590,

710 A.2d 944 (1998) and *Crane v. Scribner*, 369 Md. 369, 800 A.2d 727 (2002). In the meanwhile, for cases that were not settled, the "mini-trials" continued. *See Keene Corp. v. Levin*, 330 Md. 287, 623 A.2d 662 (1993). The device of major consolidated trials on common issues was abandoned in favor of trying clusters of smaller groups, mostly of mesothelioma and lung cancer cases.[4]

In 1987, while contemplating the consolidation approach and through a comprehensive master pre-trial order, the court created a special asbestos docket and special procedures that would govern asbestos cases. The order applied **only** to personal injury and wrongful death actions based on exposure to asbestos. Among other things, it (1) appointed named individuals as liaison counsel with authority to speak for the respective parties in matters relating to discovery and pre-trial proceedings, call meetings for the purpose of coordinating responses to questions from the court, and for initiating proposals for joint briefs and schedules, (2) created in the clerk's office five separate master files for the filing of papers (trades cases, Bethlehem Steel cases, railroad cases, other asbestos cases, and shipyard cases) and directed in some detail how cases were to be allocated to those master files, (3) created special discovery procedures, including

---

[4] In March 2014, the judge assigned to the asbestos docket, responding to a request to re-commence large consolidated trials, noted in a Memorandum Opinion the difficulty of dealing with the derivative issues that would arise in a massive consolidated trial, observing that "[w]e cannot begin to speculate about the number of derivative claims that would arise from a Consolidation III involving some sixty defendants" and that "[i]mplementing such a massive project, with large numbers of parties and diverse interests, would take an enormous amount of time and resources." *See* Memorandum Opinion in *In re: Asbestos Personal Injury and Wrongful Death Litigation Global* (Circ. Ct. Balt. City, Global Case No. 24-X-87-048500) at 22.

requirements for master sets of interrogatories, procedures for document requests and requests for admissions, procedures to govern depositions, including videotaped depositions, and limitations on medical examinations of plaintiffs, and (4) created master pre-trial schedules. Although the 1987 order has been amended from time to time – the latest being in 2013 – those kinds of special procedures, including electronic filing of documents, applicable **only** to asbestos cases, still exist.

Those orders dealt with cases that were headed for trial. They did not address the third problem noted above, of cases filed but not ready to be tried because the plaintiff was still symptom-free. That problem was dealt with through the adoption of Md. Rule 1211A (later renumbered as Rule 16-203 and recently renumbered again as Rule 16-306) in 1992. That Rule, expressly limited to actions seeking money damages for personal injury or death allegedly caused by exposure to asbestos or products containing asbestos, permits the administrative judge of the Circuit Court for Baltimore City to establish a special inactive docket for asbestos cases filed in or transferred to that court. The Rule permits the order to specify the criteria for placement of asbestos cases on that inactive docket and for the removal of such cases from the docket and to stay the time for filing responses to the complaint, discovery, and other proceedings in cases on the docket. The Rule further exempts cases on the inactive docket from Rule 2-507.

Directly on the heels of the adoption of that Rule, the administrative judge of the Circuit Court adopted an administrative order that (1) required all future asbestos cases to be placed initially on the inactive docket, (2) established medical criteria for removal of

cases from that docket, and (3) established procedures for seeking to have a case removed from the inactive docket and either placed on the court's active civil docket or, if the case had initially been transferred from another county, sent back to that county. *See In re: Asbestos Personal Injury and Wrongful Death Asbestos Cases*, No. 92344501 (1992 WL 12019620).[5] That order also has been amended from time to time, but not in any way relevant to this case. It thus appears that asbestos cases in Baltimore City are governed by the two administrative orders – one dealing with the inactive docket and the other controlling pre-trial procedure after a case is removed from that docket.

## Joinder of Tobacco and Asbestos Cases

As noted, this is not the first attempt on the part of plaintiffs suffering from lung cancer to join tobacco and asbestos companies in a single action in the Circuit Court for Baltimore City, in an effort to establish joint and several liability on their part for contributing to the development of the cancer. According to the second amended complaint filed in this case, medical evidence regarding what later came to be called "synergy" was published in the 1950s and the tobacco industry was aware of it in the 1960s. The appellate courts in Maryland first became aware of the attempt to join the two sets of defendants in 2003, in *Gress v. ACandS*, 150 Md. App. 369, 820 A.2d 616

---

[5] Rule 16-203 expressly permits asbestos cases filed in any of the other Circuit Courts in the State to be transferred to the Circuit Court for Baltimore City, provided venue would lie in Baltimore City.

7

(2003) (*Gress*), *reversed sub nom Brown v. Gress*, 378 Md. 667, 838 A.2d 362 (2003) (*Brown*).

In *Gress/Brown*, four plaintiffs, separately, had filed suit against eleven asbestos defendants based on the plaintiffs' occupational exposure to asbestos products. Those actions, which were consolidated for trial, were filed between 1991 and 1997. In 2001, the plaintiffs filed an amended complaint adding six tobacco companies as defendants. The gravamen of their action against the two sets of defendants, as it is here, was that, "because the combination of asbestos exposure and cigarette smoking acted in 'synergy' and multiplied the risk of developing lung cancer, cigarette smokers who were exposed to asbestos had a much greater chance of developing lung cancer and other disease than non-smokers who were exposed solely to asbestos." *Gress*, 150 Md. App. at 375, 820 A.2d at 619.

The tobacco companies moved to dismiss or sever the claims against them, arguing that joinder was inappropriate. At the conclusion of the hearing, the court orally granted the motion, explaining that (1) the cases involve "two different kinds of products, two different methods of distribution, two different uses," (2) the objective of the joinder Rule (Md. Rule 2-212) is to facilitate the attainment of a just, speedy, and inexpensive determination of all disputes between the parties, (3) joining asbestos defendants with tobacco companies would not accomplish those goals, (4) such joinder "will cause confusion to the jury because a unique set of practices and procedures had developed under the asbestos docket which would be, in fact, in this Court's view, prejudicial to the

8

cigarette defendants" if they were, at that late date, joined in the action, and (5) the addition of the tobacco defendants would "disrupt the orderly procedures that the asbestos docket [then had] in place." Upon those findings, the court announced that it would "dismiss without prejudice with the right to refile."

The appellate issues dealt with how the trial court actually implemented its decision to deny joinder. Immediately following the hearing on March 22, the court entered an order granting the motion "to dismiss or sever." Five days later, March 27, the plaintiffs noted an appeal from that order. That same day, the tobacco companies requested an amendment to the March 22 order to clarify that the asbestos defendants had not been dismissed. On March 28 and April 17, the court entered amended orders in three of the four cases dismissing without prejudice only the claims against the tobacco companies. No amended order was entered in the fourth case. *Gress*, 150 Md. App. at 376, n.3, 820 A.2d at 620, n.3. The plaintiffs moved to strike the March 28 and April 17 orders or, in the alternative, to enter judgment under Md. Rule 2-602(b)(1), which the court denied.

The plaintiffs' appeal was met with a motion to dismiss for want of a final judgment. The Court of Special Appeals agreed that there was no final judgment and that the trial court did not abuse its discretion in declining to enter judgment under Rule 2-602, but it concluded that **it** had the authority to enter such a judgment on its own initiative, and it did so. It then proceeded to determine that joinder of the tobacco companies was proper, believing that the cases against the two sets of defendants

9

involved common questions of law and fact, including whether there is scientific merit in the plaintiffs' synergy theory and what the defendants knew or should have known about the synergistic effect of cigarette smoking and exposure to asbestos. This Court granted *certiorari* and concluded that the Court of Special Appeals had no authority to enter judgment under Rule 2-602 when the trial court had expressly declined to do so. We reversed the intermediate appellate court's judgment and remanded with instructions to dismiss the appeal.

The appealability issue returned to us in *Silbersack v. ACandS*, 402 Md. 673, 938 A.2d 855 (2008). That too involved an attempt to join tobacco and asbestos companies in a lung cancer case under a synergy theory of liability. As in *Gress* and here, the action, filed in the Circuit Court for Baltimore City, initially was against just the asbestos companies, but five years later, in December 2001, an amended complaint was filed that joined a number of tobacco companies, which objected to the joinder and moved to dismiss the claims against them. The Circuit Court granted the motion, for the same reasons it had expressed in *Gress*. Presumably accepting that there was no final judgment, the plaintiffs, in lieu of an appeal, sought a writ of mandamus from this Court directing the trial judge to vacate the dismissal orders or, in the alternative, directing her to enter final judgment under Rule 2-602. We denied the petition. *Allen v. The Honorable M. Brooke Murdock*, Misc. No. 11, Sept. Term 2002.

The case then took another turn. In July 2005 – eight years after the action was filed – the case was consolidated with ten other lung cancer asbestos cases for trial.

Unfortunately, nine of the defendants had filed bankruptcy and the cases against them were automatically stayed pursuant to 11 U.S.C. §362. Meanwhile, the plaintiffs had dismissed their claims against the remaining defendants. They then moved (1) to reinstate their claims against the tobacco companies, (2) to enter final judgment under Rule 2-602 and (3) to "administratively dismiss" the asbestos defendants in bankruptcy subject to reinstatement upon their emergence from bankruptcy, all of which were denied.

The plaintiffs then appealed those denials, claiming that they were the equivalent of a final judgment. We disagreed with that assertion and dismissed the appeal. We confessed our ignorance of any procedure of administrative dismissal subject to reinstatement but we did observe that "if the dismissal is for the purpose of allowing a final judgment to be entered, there would be no case left to which the dismissed defendants could be rejoined or reinstated." *Id.* at 687, 938 A.2d at 863. *See also Brown v. Culbertson*, 387 Md. 501, 876 A.2d 78 (2005), directing the Court of Special Appeals to dismiss a similar appeal based on *Gress*.

This Case

With this contextual history, we look at what happened here. In January 2008, Jack Stidham filed a short form complaint on the Circuit Court's asbestos docket against 38 asbestos companies, alleging causes of action for strict liability, breach of warranty, negligence, fraud, conspiracy, and market share liability. At his request, the case was removed from the inactive docket, answers and crossclaims were filed, and discovery

11

ensued. His case was consolidated with nine other asbestos cases, and, on July 2, 2008, a scheduling order was entered that, among other things:

(1) required plaintiffs' responses to interrogatories and requests for documents to be made by December 24, 2008;

(2) required any challenge to the adequacy of those responses to be made within 15 days thereafter;

(3) required the defendants to identify parties against whom contribution, set-off, and indemnity claims will be filed by January 28, 2009;

(4) set February 11, 2009 as the deadline for serving third-party complaints;

(5) required identification of fact witnesses by plaintiffs by March 9, 2009 and identification of expert witnesses by March 19, 2009;

(6) required all depositions of plaintiffs' fact witnesses by July 20, 2009;

(7) required all defendants and third-party defendants to identify all witnesses who may testify at trial by August 9, 2009;

(8) scheduled a pre-trial conference for September 28, 2009; and

(9) scheduled trial to commence on October 20, 2009.

Fifteen months later, on April 29, 2009, the plaintiffs filed a second amended complaint that added three tobacco companies as defendants. Fifty-six pages of the amended complaint, comprising 206 paragraphs, were taken up with allegations regarding misconduct by those companies, which formed the basis for charges of strict

12

liability for failure to warn, fraud by affirmative misrepresentation, fraud by concealment, strict liability for defective design, and civil battery.

The tobacco companies moved to dismiss, without prejudice, the claims against them on the ground of misjoinder for the reasons asserted in and found meritorious in the *Gress* case, noting that the court had "repeatedly ruled in the 'synergy' cases [that] the attempt to join newly-asserted claims against Cigarette Defendants with previously filed claims in asbestos cases is inappropriate under Rules 2-212 and 2-213." No hearing was requested on the motion and none was held. On June 30, 2009, the court entered an order dismissing "without prejudice" the three tobacco companies. No time was stated within which the plaintiffs might file a new action against those companies. No request was made to enter judgment with respect to those defendants under Rule 2-602(b)(1), and no such judgment was entered.

On October 29, 2010 – sixteen months later – the plaintiffs filed a motion, in the asbestos case, to "reinstate" the tobacco companies as defendants. They alleged in their motion that, with one exception, the case had been "fully resolved as to the Asbestos Defendants, including bankrupt Defendants, by summary judgment, settlement and/or dismissal." The one exception involved claims against Wallace and Gale Settlement Trust, which the plaintiffs said they "expect to dismiss in the near future." In fact, they had filed a separate motion to dismiss that defendant but asked that the court rule on their motion for reinstatement before granting the motion to dismiss Wallace and Gale. The tobacco companies objected to that request, arguing that it was an attempt to circumvent the improper joinder order entered 16 months earlier and create appellate jurisdiction that

13

otherwise would not exist.  In separate orders, the court denied the motion for

reinstatement and granted the voluntary dismissal of Wallace and Gale.

The plaintiffs appealed from the 2009 order dismissing the complaint as to the

tobacco companies and the two October 2011 orders.  In an unreported Opinion, the

Court of Special Appeals dismissed the appeal on the ground that the record reflected

many outstanding claims that had not been dismissed by the Circuit Court or for which

judgment had not been entered on the docket and that there was therefore no final

judgment in the action.  *Stidham v. Brown & Williamson Holdings* (Sept. Term 2011, No.

1922, Opinion filed March 11, 2013).  When the case returned to the Circuit Court, the

plaintiffs filed a motion for an order entering final judgment, which, following a hearing,

the court signed.  The order, filed on April 2, 2014, stated that, "[f]or the purpose of

clarifying the record that all claims and all parties have been adjudicated in this case," it

set forth the manner of disposition of every claim against every defendant.  The claims

against the tobacco companies were characterized as dismissed "without prejudice with

the right to refile."  In addition to that listing, the order stated that "[a]ll other claims,

cross-claims or third party claims are dismissed with prejudice." This appeal was then

filed.

In a reported Opinion, the Court of Special Appeals concluded, first, that, because

all claims against all of the asbestos defendants had been finally adjudicated, there was a

final judgment in the case.  In a classic example of "Catch-22,"[6] however, the Court

---

[6] The term "Catch-22," now a popular expression in the English language, but probably in
no other one, comes from the 1961 novel of the same name by Joseph Heller.  The term

concluded that, precisely because there were no asbestos defendants left in the case, it was impossible for the tobacco defendants to be joined with them, and the issue they raised was therefore moot because what they sought to do can no longer be done.

Ordinarily, when an appeal is moot the appropriate disposition is to dismiss the appeal and not address the merits of the issues raised (other than mootness). The Court of Special Appeals correctly noted, however, that when a case "presents a recurring matter of public concern which, unless decided, will continue to evade review," the appellate court may address the merits. *Stidham v. R.J. Reynolds Tobacco*, 224 Md. App. 459, 469, 121 A.3d 156, 162 (2015), quoting in part from *LaValle v. LaValle*, 432 Md. 343. 352, 69 A.3d 1, 7 (2013). Recognizing that there were approximately 700 other cases pending in which plaintiffs have sought to join claims against tobacco companies with claims against asbestos defendants, that the Circuit Court consistently has not allowed the joinder of those claims, and that every effort at seeking appellate review of those decisions on the merits has been thwarted, the Court decided to reach the issue.

In doing so, it concluded that the Circuit Court had not given proper consideration to the purpose of Rule 2-212 and to the various ways in which any perceived problems with joining the two sets of defendants could be dealt with short of simply denying the joinder. In the end, the Court dismissed the appeal as moot but at least implicitly suggested that the Circuit Court rethink its policy.

---

has been defined as a paradoxical situation from which an individual cannot escape because of contradictory rules.

Neither side was entirely happy with what the intermediate appellate court did. We granted cross-petitions for *certiorari* to review whether there was a final judgment, whether the appeal really is moot, and, if it is, whether the Court erred in addressing the merits.

## DISCUSSION

Final Judgment

The question of whether there is a final judgment in the case was raised by the tobacco companies. They find no error in the Circuit Court's final order documenting the disposition of the claims against all of the defendants and entering judgment on all crossclaims, counterclaims, and third-party claims. Their sole argument is that the dismissal of the tobacco companies without prejudice and with the right to refile somehow either keeps them in the case or allows them to be added back, apparently whenever the plaintiffs may choose to do so. They construe the two orders – the 2009 order dismissing them from the case and the 2011 order denying the motion for reinstatement -- as little more than a ruling that the action against them cannot proceed on the asbestos docket.

That is not what the court said, however. If that is all it meant, it would simply have transferred the action against them to the general civil docket. It did not do so. It expressly dismissed the action against them with the right of the plaintiffs to **refile** it, which necessarily means to refile it as a new case. The plaintiffs did not refile it. Both sides, and the court, treated the order for what it said – dismissal. The tobacco

16

defendants were out of that case. If that were not so, the plaintiffs would not have needed to seek "reinstatement."

The general, overarching rule is that an order that has the effect of terminating an action in a circuit court is a final, appealable judgment. *Hariri v. Dahne*, 412 Md. 674, 680, 990 A.2d 1037, 1040 (2010). Dismissals are a category of orders that may have that effect. Whether they do may depend on what they say. Dismissals can be outright, without any qualifying language, or they can be accompanied by some qualifying language – with prejudice, without prejudice, with the right to file amendments to the complaint or an amended complaint (with or without a limitation on when such a filing must be made), or, as here, with the right to refile a new complaint. That language can have significance in terms of what a party can then do.

An outright dismissal of an entire complaint (or of all claims left in the complaint), without granting leave to amend, puts the plaintiff out of court and terminates the particular action in the trial court, at least as to that plaintiff. That is so whether the dismissal is with or without prejudice. *Moore v. Pomory*, 329 Md. 428, 431, 620 A.2d 323, 325 (1993); *Metro Maintenance Sys. v. Milburn*, 442 Md. 289, 112 A.3d 429 (2015). If there are no claims by or against any other parties remaining in the action, it constitutes a final and appealable judgment (assuming the other requirements for entering a judgment are satisfied). If there still are one or more claims pending, it will not constitute a final, appealable judgment but may be subject to an interlocutory appeal pursuant to Md. Code, §12-303 of the Courts Article, the entry of judgment under Rule 2-602, or an appeal under the collateral order doctrine. The relevant distinction between "with" or

17

"without" prejudice concerns whether the party is free to pursue the claim in any new litigation.

The issue presented here is whether there is an affinity between a dismissal with leave to **amend** and a dismissal with leave to **refile**. The tobacco companies note that there are no Maryland decisions directly on point and ask us to follow an Illinois decision concluding that a dismissal with the right to refile "manifests the intent of the court that the order not be considered final and appealable." *See Flores v. Dugan*, 435 N.E.2d 480 (Ill. 1982).

Because the Illinois law defining final judgment is quite different than the Maryland law on that subject, the *Flores* case is not on point. The action there was dismissed for want of prosecution. Illinois law defined a final judgment as a determination by the court on the issues presented by the pleadings, *i.e.*, a decision on the merits. An Illinois Rule provided that, unless a statute specified otherwise, an involuntary dismissal of an action operates as an adjudication on the merits. The *Flores* Court noted that an Illinois statute specifically allowed a party to refile within one year after dismissal of an action for want of prosecution, which, in its view, was inconsistent with regarding a dismissal for lack of prosecution as a decision on the merits. That is why the dismissal was not regarded as a final judgment.

In the context presented here, a dismissal with leave to **amend** is not the equivalent of a dismissal with leave to **refile**. A dismissal with leave to amend the complaint or file an amended complaint does not terminate the action. It is not a final judgment and is therefore not appealable under Md. Code, §12-301 of the Courts Article.

18

*Moore v. Pomory, supra.* As the *Moore* Court explained, the express grant of leave to amend indicates an intent not to finally dispose of the case, which remains open whether or not an amendment is filed, until another order is entered disposing of the case. *Id.*

*Metro Maintenance Sys. v. Milburn, supra* confirmed that principle but added the statement that "when an order anticipates additional proceedings in the same court during which the parties may continue to litigate their rights in the particular matter, the order does not terminate the proceedings in that court, and is not a final judgment." *Id.* at 300-01, 112 A.3d at 436. *Metro Maintenance* was a judicial review action in which, at the request of a party and the agency, the court remanded the case to the agency for a further proceeding without reaching the merits of the dispute but with the expectation that the case would then return to the court. That language, and the ultimate conclusion that the order was not a final, appealable judgment, were entirely appropriate in that context.

The language regarding whether the court anticipated further proceedings **in the same court** may be a bit too broad in the context of what is before us here, however. Any dismissal without prejudice may produce a new filing in the same court, but that prospect does not deprive the order of finality. The question here is whether, in dismissing the tobacco companies with the right to refile and refusing to reinstate them, the court had any anticipation that further proceedings may be instituted **in that action**, and the answer to that is "no." The court had a standing policy that tobacco companies should not be joined with asbestos defendants on the asbestos docket because of the procedural problems and ambiguities that would produce. That is why there was no leave

19

to amend.  The court had no reason to foreclose the plaintiffs from pursuing an action against the tobacco companies, **but not in that case**.

The 2009 order dismissing the tobacco companies from the pending case was intended as a final decision regarding joinder, but, because the claims against the asbestos defendants were still pending, it did not constitute a final judgment in the case.   The 2011 order denying the motion for reinstatement, coupled with the entry of judgment as to all of the remaining asbestos claims, constituted the final judgment.  All claims against all defendants were resolved; nothing more was left for the court to do in that case.

Mootness

An appeal is moot when there is no longer an existing controversy when the case comes before the Court or when there is no longer an effective remedy the Court could grant.  *Suter v. Stuckey*, 402 Md. 211, 219, 935 A.2d 731, 736 (2007); *Potomac Abatement v. Sanchez*, 424 Md. 701, 710, 37 A.3d 972, 977 (2012).  The predominant issue sought to be raised in this appeal, to which all others are subordinate, is whether the Circuit Court erred in denying joinder of the claims against the tobacco companies in the pending action against the asbestos defendants.  The plaintiffs asserted the right to try their case against both sets of defendants in one case, on the asbestos docket.  The Court of Special Appeals concluded that because there were no longer any asbestos defendants left in the case, there were no such defendants with which the tobacco companies can be joined and therefore no effective remedy that the appellate court could provide even if it

20

believed that the denial of joinder was erroneous. All of the horses had left the barn, indeed, thrown out of the barn by the plaintiffs.

The plaintiffs do not challenge the underlying fact that joinder – the sole thing they sought – is no longer possible, but they offer as an effective remedy allowing them "to proceed against the [tobacco companies] in the case in which they were properly sued but dismissed in error by the Circuit Court." That is not, however, a permissible remedy. The case in question was on the special asbestos docket that was designed, and has been exclusively reserved, for asbestos cases. It does not appear that any non-asbestos case has ever been placed on that docket or been subject to the many special procedures unique to that docket; nor have the plaintiffs offered any analysis of whether or how those special procedures might apply to an action against tobacco companies.

We garner from the briefs that the problem for the plaintiffs is that, by not refiling their action against the tobacco companies in 2009, limitations may have run on their claims, which is why they want to be reinstated in a case that no longer exists. To the extent that is true, it is a self-inflicted wound that does not justify this Court in creating a new and special exception to the well-established definition and impact of mootness. We expressly warned the Bar of this prospect in 2008 in *Silbersack v. ACandS, supra,* 402 Md. at 687, 938 A.2d at 862-63 -- also a case in which lung cancer plaintiffs sought to join tobacco and asbestos companies on a synergy theory – in which we noted that, if dismissal of remaining defendants "is for the purpose of allowing a final judgment to be entered, there would be no case left to which the dismissed defendants could be rejoined or reinstated." This appeal clearly is moot and must be dismissed for that reason.

21

<u>Addressing the Merits Anyway</u>

In its decision in this case, the Court of Special Appeals correctly noted that, even when an appeal is moot, the appellate court may reach, or at least comment on, the merits when the case "presents a recurring matter of public concern which, unless decided, will continue to evade review" and concluded that this was a case justifying such comment. *Stidham v. R.J. Reynolds Tobacco, supra*, 224 Md. App. at 469, 121 A.3d at 162. We agree.

It appears that the Circuit Court, commencing at least with the *Gress* plaintiffs in 2002, has adopted a firm policy of not allowing the joinder of tobacco and asbestos defendants in personal injury/wrongful death cases, that, in part due to the court's unwillingness to enter judgment under Rule 2-602 when asked to do so, the correctness of that policy has evaded appellate review on at least five occasions, and that there are approximately 700 other lung cancer cases currently pending in that court in which this issue can and may be raised. This is a "recurring matter of public concern which, unless decided, will continue to evade review."

On two occasions – this case and in *Gress* – the intermediate appellate court expressed reasons why it believed the Circuit Court's policy was wrong. We shall comment on those reasons shortly but will add first our concern as to whether, if that policy is a general one that the court intends to apply in every synergy case, without regard to particular circumstances of the case, it very well may constitute an unauthorized local Rule and be invalid for that reason. *See* Md. Rule 1-102 and *Sumpter v. Sumpter*, 427 Md. 668, 671, 50 A.3d 1098, 1100, n.2 (2012), *See also Sumpter v. Sumpter,* 436

22

Md. 74, 86, 80 A.3d 1045, 1052 (2013), pointing out that "[a] judge presiding over a particular case may not blindly apply an administrative policy . . . without considering the particular circumstances at hand."

Permissive joinder is governed by Md. Rule 2-212. Section (a) provides, in relevant part, that "[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all defendants will arise in the action." The Rule continues that "[a] plaintiff or defendant need not be interested in obtaining or defending against all relief demanded" and that "[j]udgment may be given for one or more of the plaintiffs according to their respective rights to relief and against one or more defendants according to their respective liabilities."

Section (b) of the Rule permits the court to "make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of another who asserts no claim against the party and against whom the party asserts no claim, and may order separate trials or make other orders to prevent delay or prejudice."

The joinder of parties was looked on favorably by this Court even before there was a general Rule on the subject. *See Northwest'n Nat. Ins. Co. v. Rosoff*, 195 Md. 421, 425-27, 73 A.2d 461, 462-63 (1950). In *A & P Co. v. Crown*, 243 Md. 280, 287, 220 A.2d 598, 601-02 (1966), the Court explained that the purpose of Rules permitting the joinder of multiple parties and claims "was to remedy the procedural and substantive defects in the law which prevented the resolution in one action of the rights and obligations of all

23

parties whose connection with the case arose out of the same source and occurrence" and that "[c]ourts have been liberal in utilizing such rules to permit the trial of connected issues in one action." More recently, we confirmed that "[t]he purpose behind the joinder of parties is 'to simplify and expedite proceedings and to avoid the useless duplication, expense, and possible uncertainty of more than one trial." *Carter v. Wallace & Gale*, 439 Md. 333, 349, 96 A.3d 147, 156 (2014), n.7, quoting from *Allen & Whalen v. Grimberg Co.*, 229 Md. 585, 588, 185 A.2d 337, 339 (1962).

As noted above, the Circuit Court, beginning in *Gress*, has denied the joinder of claims against tobacco and asbestos defendants because (1) those claims involve different kinds of products, methods of distribution, and uses, (2) the case against the asbestos defendants is governed by the special procedures that are reserved for asbestos cases, and (3) significant problems would arise either in subjecting tobacco companies to those procedures or having separate procedures for the two sets of defendants. In that last regard, the court noted that applying those procedures would be prejudicial to the tobacco companies if they were added "now to these cases."

In *Gress*, having assumed jurisdiction over the appeal by entering its own judgment under Rule 2-602, the Court of Special Appeals gave little consideration to the reasons expressed by the Circuit Court but determined that joinder was appropriate because (1) the claims against the two sets of defendants were related and arose out of the same series of occurrences – exposure to both asbestos products and cigarette smoke at the same location during the same period of time, (2) the case involved numerous common questions of law and fact, including whether there is scientific merit in the

24

synergy theory, and (3) of concern that, if the cases were severed, "it is open to each defendant to prove that the other was solely responsible or responsible for the greater part of the damage, and so defeat or minimize recovery." *Gress*, 150 Md. App. at 388, 820 A.2d at 627, n.10. In this case, the intermediate appellate court more or less confirmed what it had said in *Gress*,

Those are valid points, and it is not at all clear that they were given any consideration by the Circuit Court in this case. Instead, as noted, the court seemed to rely solely on the reasons (and the decision) expressed by the trial judge in *Gress*. On the other hand, the concerns expressed by that judge in *Gress* also are legitimate but were given little consideration by the Court of Special Appeals.

Because we are dealing here with lung cancer cases that have been removed from the inactive asbestos docket, there is no real prospect of tobacco claims being placed on **that** docket. There are, however, at least two other legitimate concerns that the Court of Special Appeals has not fully addressed. The first – certainly in this case as well as in *Gress* – is that the plaintiffs did not attempt to join the tobacco defendants at the outset but waited years in *Gress* and 15 months in this case to join them. They do not suggest that they were unaware of the synergy theory earlier – indeed, their second amended complaint indicates that this theory was publicized more than 50 years ago and they raised the synergy issue in *Gress* in 2001.

By the time they decided to join the tobacco companies in this case, discovery was virtually complete, most of the deadlines set in the scheduling order had passed, all fact witnesses and experts had been identified, trial was to commence in five months when

25

everything was thrown into disarray – not only new defendants, but new theories of liability against all defendants requiring expanded or wholly new expert testimony, reopening of discovery, really starting over. Quite apart from where the balance should be drawn in other situations, we would be hard pressed to find an abuse of discretion in refusing to permit joinder under these circumstances. Taking this case back nearly to square one after 15 months would have been wholly inconsistent with everything the court has been trying to do since the 1980s to expedite the disposition of asbestos cases.

More generally, joinder of asbestos and tobacco defendants raises the issue of the extent to which, if at all, the special procedures applicable to asbestos cases should extend to tobacco companies. The trial judge in *Gress* obviously was concerned about that, but there has yet to be any recorded analysis of how, or whether, the two different pre-trial procedures could be effectively and efficiently meshed. Rule 2-212(b) tacitly recognizes that problems such as this can arise from a joinder. This case is over, but in any future cases – at least those in which the proposed joinder is a timely one -- it will be incumbent on plaintiffs seeking to join tobacco and asbestos defendants to address these issues objectively and in detail and for the court to give fair consideration to all proposals and objections.

> JUDGMENT OF COURT OF SPECIAL APPEALS DISMISSING APPEAL AFFIRMED; COSTS IN THIS COURT AND COURT OF SPECIAL APPEALS TO BE DIVIDED EQUALLY BETWEEN PETITIONERS AND RESPONDENTS.

26

Circuit Court for
Baltimore City
Case No. 24X08000326
Argued 5/9/16

R.J. REYNOLDS TOBACCO CO., et al.

vs.

DOUGLAS A. STIDHAM, etc., et al.

Barbera, C.J.
Greene
McDonald
Harrell, Glenn T. (Retired, Specially
Assigned)
Battaglia, Lynne A. (Retired, Specially
Assigned
Raker, Irma S. (Retired, Specially
Assigned)
Wilner, Alan M. (Retired, Specially
Assigned),

JJ.

Opinion by McDonald, J., Dissenting in Part

Filed:  July 5, 2016

I agree with the Majority opinion that there was a final judgment in this case. I also agree with the considerations suggested in the Majority opinion – and in the opinion of the Court of Special Appeals – for determining whether tobacco defendants should be joined as co-defendants with asbestos defendants when a complaint alleges that synergistic effects of tobacco and asbestos exposure harmed the plaintiff.

I differ with the Majority opinion on the question of mootness. In my view, the Majority opinion fails to distinguish between a case or controversy being moot and a particular issue being moot. A case is moot when there is no longer controversy between the parties or when the court can no longer provide a remedy. *Green v. Nassif*, 401 Md. 649, 654, 934 A.2d 22 (2007). However, a particular issue may become moot without resolving the controversy between the parties or depriving the court of the power to provide relief.

As the Majority opinion recounts, the Stidhams joined causes of action against asbestos defendants and tobacco defendants in a single complaint. The tobacco defendants moved to dismiss the claims against them on the ground that the joinder of defendants was not proper under Maryland Rules 2-212 and 2-213. The Circuit Court granted that motion. This appeal concerns the merits of the Circuit Court's decision to dismiss the tobacco defendants.

Now that the causes of action against all of the asbestos defendants have been resolved, the basis for the Circuit Court's order of dismissal is moot. But the controversy between the Stidhams and the tobacco defendants set forth in the causes of action pled in

their complaint is not moot. The Majority opinion states that the "sole thing" sought by the Stidhams was joinder. That is not quite right. The Stidhams were not pursuing joinder in the abstract, but rather sought to prosecute in this case claims concerning the allegedly synergistic effects of asbestos and tobacco against both asbestos and tobacco defendants. They are still interested in pursuing such claims against the tobacco defendants, even though the claims against the asbestos defendants have been resolved. But, as the Majority opinion accurately describes, the Circuit Court did not just sever the claims against the tobacco companies; it dismissed them. Majority slip op. at 13, 16-18.

Assume for the moment that it was legal error for the Circuit Court to dismiss the tobacco defendants.[1] It cannot be the case that a party whose claims are dismissed in error and who dutifully waits for a final judgment in order to seek relief in an appellate court loses the opportunity to pursue its claims because the rationale for the dismissal is not only erroneous, but has also become moot. That makes no sense.

The Majority states that the Stidhams seek to have the tobacco defendants reinstated "in a case that no longer exists." Majority slip op. at 21. However, this case "no longer exists" in the same sense that *any case* in which the claims against the defendants are dismissed and the plaintiffs appeal "no longer exists." For example, in *Litz v. Maryland Department of the Environment*, 434 Md. 623, 76 A.3d 1076 (2013), the lower courts dismissed the claims brought against all of the various co-defendants on a variety of

---

[1] The Court of Special Appeals opinion suggests that the Circuit Court did err. The Majority opinion does not appear to reach a conclusion on that question.

2

grounds and the plaintiff appealed. In a sense, that case "no longer existed" in the Circuit Court, as no claims remained pending there, but that did not prevent this Court from ultimately returning the case to the Circuit Court after determining that the lower courts had erred as to some of the bases for dismissal. *See* 446 Md. 254, 280, 131 A.3d 923 (2016).

Along the same lines, the Majority opinion quotes a statement in *Silbersack v. ACandS, Inc*, 402 Md. 673, 687, 938 A.2d 855 (2008), that, if dismissal of the remaining defendants in that case was "for the purpose of allowing a final judgment to be entered, there would be no case left to which the dismissed defendants could be rejoined or reinstated." However, that statement meant something quite different in the context of that case. In *Silbersack*, the proposal before this court was to "administratively" dismiss bankrupt asbestos defendants in order to obtain a final judgment, subject to reinstatement of those defendants later if the bankrupt defendants ever emerged from bankruptcy. Thus, in that case, the future reinstatement would involve the *same defendants* that the plaintiff had voluntarily dismissed from the case, not defendants as to which the plaintiff had opposed dismissal. In *Silbersack*, the Court was saying that, if a plaintiff voluntarily dismisses all defendants, the case is over and there is no provision for "administratively" resurrecting it. By contrast, in this case, the Stidhams have voluntarily dismissed some defendants and the Circuit Court (in their view) improperly dismissed the other defendants – a quite different situation.

3

It may be, for the reasons suggested in the Majority opinion, that the case against the tobacco defendants should not be retained on the "asbestos docket"[2] or perhaps should be dismissed because these defendants were added too late – or for any of a multitude of reasons – but not because the case against the tobacco defendants is "moot." It is not the *case* against those defendants that is moot, but rather the *rationale for dismissing them* from this action that is moot.

I would remand the case to the Circuit Court to determine, in light of the considerations set forth in the Majority opinion and the opinion of the Court of Special Appeals, whether to retain this action on the asbestos docket, transfer it to the regular civil docket, or dismiss it for some other reason.

---

[2] The Majority opinion appears to characterize this action, in its current form, as a "non-asbestos case." Majority slip op. at 21. However, the allegations of the counts of the complaint that were dismissed – and that would be restored once the order of dismissal is reversed – allege synergistic effects of asbestos and tobacco exposure. It is not entirely clear why one would label a case that consists of causes of action based in part on the effects of asbestos exposure a "non-asbestos case."