*Stanley Dunham, et al. v. University of Maryland Med. Ctr., et al.*, Nos. 260 & 1443, September Term, 2017

MEDICAL MALPRACTICE; CERTIFICATE OF QUALFIED EXPERT; HEALTH CARE PROVIDER WHO BREACHED STANDARD OF CARE MUST BE IDENTIFIED; EXTENSION TO FILE PROPER CERTIFICATE OF QUALFIED EXPERT

Pursuant to the Healthcare Malpractice Claims Act (the "Act"), Md. Code (2013 Repl. Vol.) §§ 3-2A-01 *et seq.* of the Courts and Judicial Proceedings Article ("CJP"), a person with a medical malpractice claim must file a certificate of qualified expert within 90 days after the person files a statement of claim with the Health Care Alternative Dispute Resolution Office ("HCADRO"). CJP § 3-2A-04(b)(1)(i)1. The certificate of qualified expert must "mention explicitly the name of the licensed professional who allegedly breached the standard of care." *Carroll v. Konits*, 400 Md. 167, 196 (2007). *Accord Retina Grp. of Wash., P.C. v. Crosetto*, __ Md. App. __, No. 2385, Sept. Term, 2016, slip op. at 17 (filed Apr. 27, 2018). If the certificate of qualified expert fails to comply with the filing requirements of the Act, the "'failure to file a proper certificate is tantamount to not having filed a certificate at all.'" *Puppolo v. Adventist Healthcare, Inc.*, 215 Md. App. 517, 532 (2013) (quoting *D'Angelo v. St. Agnes Healthcare, Inc.*, 157 Md. App. 631, 645 (2004)).

If a certificate of qualified expert is not filed, as required, within the 90 days following the filing of a statement of claim, the Act mandates dismissal, without prejudice, unless the person obtains a statutory extension of time to file the certification. *Walzer v. Osborne*, 395 Md. 563, 575-76 (2006). The statutory extension sought here was pursuant to CJP § 3-2A-04(b)(1)(ii), which states that, "[i]n lieu of dismissing a claim or action," "the court shall grant an extension of no more than 90 days for filing the certificate required," if two conditions are shown, i.e., "[t]he limitations period applicable to the claim or action has expired," and "[t]he failure to file the certificate was neither willful nor the result of gross negligence."

When the two enumerated conditions are met, this provision is mandatory and is granted automatically in lieu of dismissal. The extension, however, is limited. Pursuant to the automatic extension made available by CJP § 3-2A-04(b)(1)(ii), a plaintiff must file a proper certificate of qualified expert within the second 90-day period. If a proper certificate of qualified expert is not filed within this combined 180-day period provided by the Act, a medical malpractice claim is properly dismissed.

Here, the certificate of qualified expert filed with the statement of claim in *Dunham I* stated that appellees, acting through their agents, servants, or employees, breached the standard of care, but it did not specifically identify any individuals who breached the standard of care. The certificate of qualified expert, therefore, failed to conform to the filing

requirements of the Act.  Because the applicable limitations period for the claim had expired, there was no allegation that the failure to file a proper certificate of qualified expert was willful or the result of gross negligence, and there were 35 days left in the 180-day time period to file a proper certificate, the court erred in dismissing *Dunham I*.

Circuit Court for Baltimore City
Case Nos. 24-C-16-006500
　　　　24-C-17-002662

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 260 & 1443

September Term, 2017

_____

STANLEY DUNHAM, et al.

v.

UNIVERSITY OF MARYLAND MEDICAL
CENTER, et al.

_____

Eyler, Deborah S.,
Graeff,
Nazarian,

JJ.*

_____

Opinion by Graeff, J.

_____

Filed:  June 28, 2018

* Judge Kevin F. Arthur did not participate in the
Court's decision to designate this opinion for
publication pursuant to Md. Rule 8-605.1.

This consolidated appeal arises from a medical malpractice action filed by appellants, Stanley and Renee Dunham, against the University of Maryland Medical Center, LLC ("UMMC"), Maryland General Hospital, Inc., d/b/a University of Maryland Medical Center Midtown Campus ("Midtown"), and the University of Maryland Medical System Corporation ("UMMS") (collectively, appellees). The Dunhams allege that appellees breached the standard of care in failing to implement procedures to prevent pressure ulcers from developing and/or progressing and failing to treat the pressure ulcers once they developed.

The claim initially was filed in the Health Care Alternative Dispute Resolution Office ("HCADRO") and transferred to the Circuit Court for Baltimore City, which granted appellees' motion to strike the certificate of qualified expert and motion to dismiss, without prejudice ("*Dunham I*"). Mr. and Mrs. Dunham appealed the dismissal of *Dunham I*.

The Dunhams then filed in the HCADRO, using the same claim number as the initial claim, a motion for extension of time for filing a certificate of qualified expert. The HCADRO granted an extension, the Dunhams filed a second certificate, and the claim was transferred to the circuit court, which again dismissed the claim ("*Dunham II*").

On appeal from the rulings in *Dunham I* and *Dunham II*, Mr. and Mrs. Dunham present the following questions for this Court's review, which we have rephrased slightly, as follows:

1. Did the circuit court err in dismissing *Dunham I* for failure to identify individual health care providers in the certificate of qualified expert, even though the only defendants were the named institutional health care providers?

2. Did the circuit court err in *Dunham I* in failing to grant the Dunhams an extension to file a proper certificate of qualified expert pursuant to Md. Code (2013 Repl. Vol.) § 3-2A-04(b)(1)(ii) of the Courts and Judicial Proceedings Article ("CJP"), in lieu of dismissing the case?

3. Did the circuit court err in dismissing *Dunham II* on the basis of *res judicata* when no final judgment had been entered in *Dunham I*?

For the reasons set forth below, we shall vacate the judgment of the circuit court in *Dunham I* and dismiss as moot the appeal in *Dunham II*.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Medical Care*

This is a medical malpractice action relating to the care of Mr. Dunham from October 28, 2013, through February 6, 2014. Because the issues on appeal are procedural in nature and do not involve the merits of the underlying dispute, we provide only a brief synopsis of Mr. Dunham's medical history, as set forth in the pleadings.

On October 28, 2013, Mr. Dunham was admitted to UMMC for a medical procedure to replace his aortic heart valve. Upon his admission, he was "assessed using the Braden Scale for predicting pressure ulcer risk and was given a score of less than 15," which indicated that Mr. Dunham was "at a high risk for developing pressure ulcers."

Following the completion of his medical procedure, Mr. Dunham's medical care was complicated by hypotension, and he later required treatment for ESBL Klebsiella

2

pneumonia, which ultimately resulted in a tracheostomy.[1]   Mr. Dunham was in the intensive care unit at UMMC until November 15, 2013.

On November 2, 2013, during his stay at UMMC, Mr. Dunham began developing bilateral pressure ulcers on his buttocks.  By November 5, the ulcers had worsened, resulting in skin tears and peeling, and by November 11, Mr. Dunham had "full thickness skin necrosis."

On November 15, 2013, Mr. Dunham was transferred to Midtown for further care to address the pressure ulcers.  On February 6, 2014, after receiving additional treatment for the pressure ulcers, he was discharged with instructions to receive intravenous antibiotics and continue at-home wound care.

### *Procedural History*

### Dunham I

On October 14, 2016, Mr. and Mrs. Dunham filed a statement of claim with the HCADRO "alleging medical negligence on the part of [UMMC], Midtown, and UMMS" relating to the development and progression of pressure ulcers.  On November 16, 2016,

---

[1] ESBL stands for extended spectrum beta-lactamase producers, which are organisms resistant to certain antibiotics.  Gail Bennett RN, MSN, CIC, *Multi-drug Resistant Organisms (MDROs) in Healthcare Facilities*, https://perma.cc/UH2G-M3GN (last visited May 14, 2018).

Mr. and Mrs. Dunham filed a certificate of qualified expert and report ("certificate") and then waived arbitration.[2]

> The certificate, completed by Antonios P. Gasparis, M.D., stated, in pertinent part:
>
>> Based upon my review of this matter, and upon my knowledge, training, and experience in the field of vascular surgery and wound care, and as set forth more fully in the attached Report, it is my opinion to a reasonable degree of medical probability that Health Care Providers, University of Maryland Medical Center, LLC, Maryland General Hospital, Inc, d/b/a University of Maryland Medical Center Midtown Campus, and University of Maryland Medical System Corporation, through their agents, servants, and/or employees, breached the applicable standard of care in their care and treatment of Stanley Dunham in and around October 28, 2013 through February 6, 2014, and that these breaches of the standard of care caused injury to Mr. Dunham.

Although the certificate named UMMC, Midtown, and UMMS, "through their agents, servants, and/or employees," as responsible for the breach of the standard of care, which caused Mr. Dunham's injury, it did not identify the specific agents, servants, or employees whose care was at issue. In his corresponding report, Dr. Gasparis again identified the

---

[2] As discussed *infra*, the Healthcare Malpractice Claims Act (the "Act"), Md. Code (2013 Repl. Vol.) §§ 3-2A-01 *et seq.*, of the Courts and Judicial Proceedings Article ("CJP") establishes the procedures required for filing a medical malpractice claim against a health care provider. *Retina Grp. of Wash., P.C. v. Crosetto*, __ Md. App. __, No. 2385, Sept. Term, 2016, slip op. at 14 (filed Apr. 27, 2018). CJP § 3-2A-04(b)(1)(i) requires that a plaintiff "file a certificate of a qualified expert . . . attesting to [the] departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint." CJP § 3-2A-04(b)(3)(i) further provides that the certificate of a qualified expert shall be filed "with a report of the attesting expert attached." The filing of a proper certificate of a qualified expert and report is an "'indispensable step,'" and a claim cannot be maintained without it. *Puppolo v. Adventist Healthcare, Inc.*, 215 Md. App. 517, 528 (2013) (quoting *Breslin v. Powell*, 421 Md. 266, 290 n. 20 (2011)).

4

health care providers generally as UMMC, Midtown, and UMMS, "through their agents, servants, and/or employees," without specifying which of appellees' individual health care providers he believed to have provided deficient care.[3]

On December 1, 2016, after the Dunhams waived arbitration and the HCADRO issued an order of transfer, Mr. and Mrs. Dunham filed a two-count complaint against appellees, case number 24-C-16-006500 ("*Dunham I*"). The first count asserted a claim of negligence, alleging that appellees, and their "agents, servants, and employees," owed a duty to Mr. Dunham to "render and provide health care within the ordinary standards of medical, hospital and nursing care," to exercise care in its selection of personnel, and to supervise and provide patients with treatment "commensurate with the condition from which the patient suffers." It alleged that appellees and their agents were under a duty to provide care "in accordance with the standards of practice among members of the nursing profession," but the "actions and inactions of the [appellees], through their agents, servants,

---

[3] In the report, Dr. Gasparis explained the breach of the standard of care as follows:

[I]n failing to implement appropriate interventions to prevent pressure ulcers; in failing to render appropriate treatment to prevent the development and progression of pressure ulcers; in failing to timely implement appropriate procedures in the early course of the development of pressure ulcers to prevent their progression; in failing to render appropriate treatment of pressure ulcers; in failing to perform daily wound care assessments; in failing to timely relieve pressure of the Claimant to prevent pressure ulcers and/or prevent such ulcers from progressing; in failing to turn and reposition the Claimant on a regular and scheduled basis to prevent pressure ulcers and/or prevent such ulcers from progressing; in failing to provide a proper pressure redistribution surface; and, among other things, in failing to properly dress and/or medicate developing pressure ulcers in their early stages.

5

and employees, breached the applicable standards of nursing care," and as a result of the negligence of appellees, "acting through their agents, servants and employees, Mr. Dunham suffered severe and permanent injuries." The second count alleged loss of consortium, incorporating the allegations set forth in the first count and stating that the damages were caused by "the wrongful acts and omissions of the [appellees] directly and by and through their actual and apparent agents, servants, and/or employees."

On February 2, 2017, appellees filed a Motion to Strike Plaintiffs' Certificate of Merit and Report and Motion to Dismiss and Request for Hearing. They argued that Dr. Gasparis' certificate and report "fail[ed] to meet the mandatory minimum requirements set forth by the Health Care Malpractice Claims Act" because they "fail[ed] to identify by name [or specialty] <u>any</u> licensed professional health care provider(s) at [UMMC], [Midtown], and [UMMS] who [we]re alleged to have breached the standard of care." Appellees also argued that a proper certificate and report was an "'indispensable step' and a condition precedent to the medical malpractice process," and "when a plaintiff fails to file an appropriate certificate and report, her case must be dismissed by the Circuit Court."

The Dunhams filed an opposition, asserting that their certificate sufficiently stated the health care providers that breached the standard of care, noting that the health care institutions were named. The Dunhams argued that the certificate was not required "to identify specific agents when a Defendant is an institutional agency."

The Dunhams also argued that the certificate and report "contain[ed] sufficient detail to allow for the [appellees] to identify which, of their own agents, servants and/or

6

employees, treated [Mr. Dunham] throughout his lengthy, five (5) month admissions." In that regard, they asserted that it was "wholly unreasonable" to expect them "to identify the multitude of physicians and nursing staff who attended to [Mr. Dunham]" because, "[l]ike most medical charts, [Mr. Dunham's] record [was] replete with illegible handwritten notes that [were] impossible to decipher."

Alternatively, Mr. and Mrs. Dunham argued that, if the court was persuaded that the certificate and report were deficient, the court was required to grant a 90-day extension to file an amended certificate pursuant to CJP § 3-2A-04(b)(1)(ii).[4] The Dunhams asserted that the extension was a matter of right and was not discretionary.

In reply, appellees reiterated their argument that it was the Dunhams' burden to identify the individual licensed professionals whose care was criticized in the certificate.

---

[4] Section 3-2A-04 provides that a person having a claim against a health care provider for damage due to a medical injury shall file a claim with the Director of the Health Care Alternative Dispute Resolution Office, § 3-2A-04(a). Section 3-2A-04(b)(1)(i) further provides that an action shall be dismissed, without prejudice, if the plaintiff fails to file a certificate of a qualified expert with the Director within 90 days from the date of the claim, which attests to the departure from standard of care, and that the departure from standard of care is the proximate cause of the alleged injury. Section 3-2A-04(b)(1)(ii) provides:

> In lieu of dismissing the claim or action, the panel chairman or the court shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if:
>
> 1. The limitations period applicable to the claim or action has expired; and
>
> 2. The failure to file the certificate was neither willful nor the result of gross negligence.

7

They argued that, by naming only corporate entities, appellees were "unable to determine which of the thousands of licensed professionals that act as their employees, agents, and/or servants [were] being criticized for allegedly breaching the applicable standard of care." Appellees disputed the claim that the medical records were "impossible to decipher," asserting that they had provided electronic medical records, which "clearly identified in type-written format" many of the individual licensed professionals providing care to Mr. Dunham.

Appellees also argued that the Dunhams were not entitled to an extension to file a proper certificate. They asserted that, because filing a proper certificate was a condition precedent to filing suit, the court did not have jurisdiction over the case or have authority to grant an extension, and Mr. and Mrs. Dunham had to return to the HCADRO to refile their claim.[5]

On March 8, 2017, the court held a motions hearing on appellees' motion to strike the certificate and dismiss the case. That same day, the court issued its ruling, stating as follows:

> In the case at bar, there is no specificity, nor mention of any particular licensed healthcare provider who allegedly violated the standard of care. The Court does not find that identifying only the listed [appellees] in the certificate meets the required standards of specificity to determine whether any particular physician violated the standard of care. The Court is satisfied that, as filed, the certificate is deficient and does not comport with the statute on Maryland law.

---

[5] Mr. Dunham was discharged from the hospital on February 6, 2014, and as counsel for the Dunhams conceded at oral argument, the statute of limitations had expired by March 8, 2017, the date of the hearing.

The court then addressed Mr. and Mrs. Dunham's contention that they should be permitted an extension to file a conforming certificate. It stated:

> The Court notes the Plaintiffs have stated to the Court, if it is inclined to grant the request to dismiss, then under CJP [§] 3-2A-04(b)(1)(ii), the Court is required to grant a mandatory extension of no more than 90 days of filing the certificate [] if the limitations period applicable to the claim or action has expired, and the failure to file the certificate was neither willful, nor the result of gross negligence.
>
> The Court has reviewed Puppolo v. Adventist Healthcare, and also notes that the court, also referring to D'Angelo, noted that the failure to file a proper certificate is tantamount to not having filed a certificate at all.
>
> The Court notes that one was filed in this particular case, but to apply CJP [§ 3-2A-04(b)(1)(ii)] under the circumstances would not be consistent with what this Court believes was the intention of the legislature. Plaintiffs objectively would have the opportunity to file the bald [certificate] and then when it is found to be insufficient by the Court, ask for a do over. The Court does not find that to be appropriate. As such, without a proper certificate, the Court finds that the matter should not be in the Circuit Court. Again, if the Plaintiffs so choose, they may file with HCADRO [where] there . . . can be a determination whether limitations have been expired, . . . whether the limitations have been tolled, or whether the failure to file a proper certificate is neither willful, nor the result of gross negligence.
>
> The Court, therefore, will grant the motion to strike the certification and motion to dismiss will be granted without prejudice.

On April 10, 2017, Mr. and Mrs. Dunham appealed the dismissal of *Dunham I*.

## Dunham II

On March 17, 2017, approximately one week after the circuit court's ruling in *Dunham I*, and prior to filing an appeal from that ruling, the Dunhams filed with the HCADRO a Motion for Extension of Time For Filing of a Certificate of Qualified Expert.

In this pleading, they used the same claim number as that assigned to their initial claim in *Dunham I.*

The Dunhams asserted that they were entitled to a 90-day extension to file a proper certificate, arguing that the HCADRO had jurisdiction over the action because the effect of the certificate being deficient was that the court never obtained jurisdiction of the claim, which "remained in HCADRO during this time." They also asserted that the failure to file a proper certificate was neither willful nor the result of gross negligence because they were "unable to identify specific heath care providers due to the illegibility of the Health Care Providers' own agents' handwriting," but on March 6, 2017, they "finally received the full medical chart from the Health Care Providers," which contained electronic entries that were easily ascertainable.

Appellees argued that the Dunhams could not reopen the statement of claim underlying *Dunham I* after waiving arbitration. They asserted that the filing of a certificate, proper or not, was a condition precedent to filing in court, and once arbitration was waived, the circuit court properly obtained jurisdiction of the matter.[6] Appellees argued that, once the court dismissed the claim, Mr. and Mrs. Dunham were required to file a "new claim with a <u>new</u> claim number" in the HCADRO, rather than use the same claim number as

---

[6] We note that this argument was inconsistent with that made to the circuit court, where appellees argued that the Dunhams were not entitled to an extension because filing a proper certificate was a condition precedent to filing suit, and without a proper certificate, the court did not have jurisdiction over the case or have authority to grant an extension.

before, because the transfer of the claim in *Dunham I* to the court removed the matter from the HCADRO's jurisdiction.

Appellees alternatively argued that no good cause existed for an extension because, contrary to the Dunhams' assertion, appellees had produced, prior to suit being filed, records that included hand written notes and Electronic Medical Records ("EMR"), which contained chart records in electronic and typewritten format, including the names of "many of the individual licensed professionals that cared for Mr. Dunham."[7] Additionally, appellees asserted that, even if the individual identity of particular individuals could not be ascertained from the medical records, Mr. and Mrs. Dunham could have "identified particular specialties and specific dates, times, actions or inactions in the medical records that [were] claimed to constitute a breach of the standard of care."

On April 13, 2017, the HCADRO ordered that Mr. and Mrs. Dunham be granted a 60-day extension to file a proper certificate. It found that it had the authority to grant an extension because the claim "was never properly transferred to the Circuit Court for Baltimore City due to the Claimant's failure to file a proper [certificate] with the [HCADRO]," and therefore, the HCADRO "retained jurisdiction of this claim due to the improper transfer." It concluded that an extension was warranted because the statute of limitations had expired, the Dunhams' failure to file a certificate "was neither willful nor the result of gross negligence," and there was "good cause for an extension."

---

[7] Appellees specifically stated that nursing notes and assessments included names of individuals providing care.

11

On April 24, 2017, again using the same claim number as the statement of claim underlying the court action in *Dunham I*, Mr. and Mrs. Dunham filed a second certificate and report with the HCADRO. This certificate stated that appellees, through their agents, servants, and/or employees, including but not limited to 29 listed individuals, breached the standard of care. Mr. and Mrs. Dunham then elected to waive arbitration to refile their claim in circuit court. On April 27, 2017, the HCADRO issued an order transferring the matter to circuit court.

On May 12, 2017, Mr. and Mrs. Dunham filed another complaint in the circuit court, case number 24-C-17-002662 ("*Dunham II*"), asserting the same two causes of action raised in *Dunham I* against appellees. The only substantive change from the complaint filed in *Dunham I* was an allegation in the body of the complaint of *Dunham II*, which identified 29 individuals, consistent with the names identified in the second certificate, who were alleged to have provided deficient care.[8]

On June 23, 2017, appellees moved to strike the complaint, asserting that the case "ha[d] already been filed, litigated and argued" in the circuit court, it was pending on appeal, and therefore, the circuit court did not have "jurisdiction over this case." They asserted that Mr. and Mrs. Dunham had improperly "re-opened their Statement of Claim" in the HCADRO, which had no jurisdiction to act on the request.

---

[8] In *Dunham II*, Mr. and Mrs. Dunham named only appellees as defendants. They did not name any of the individual health care providers identified therein as individual defendants.

Mr. and Mrs. Dunham opposed appellees' motion to strike, and in the alternative, they sought a stay of *Dunham II*. They first argued that the HCADRO "retained jurisdiction over this case" after the claim was transferred to circuit court because the court "directed to do so." Second, they argued that they were not asking the court to address the sufficiency of the certificate at issue on appeal in *Dunham I*, but rather, they "brought a new case" seeking damages. Finally, Mr. and Mrs. Dunham requested that, if the court was not inclined to deny appellees' motion, it stay the matter pending the outcome of the appeal of *Dunham I*.

On August 18, 2017, the court held a hearing on appellees' motion to strike the complaint filed in *Dunham II*. The parties reiterated the arguments in their written pleadings. In response to the court's question whether this was a "parallel related case" or "a duplicate case," counsel for the Dunhams stated that it was not a duplicate case "in the sense that [there was] a new case number" and a new certificate "that had changed the posture of the case." Counsel also asserted that, if the court granted a stay and ruled that the court had jurisdiction over the claim, counsel would dismiss the appeal.

At the end of the hearing, the court stated that it was "inclined to grant the motion" to strike the complaint, but it was going to re-read a case before issuing its order. In an order entered on August 24, 2017, the court dismissed *Dunham II*. It made the following findings:

> **FOUND** that the parties agree that the claim at issue in this case is the same claim that was at issue in case number 24-C-16-006500, that it involves the same parties and the same causes of action, and it is further

13

**FOUND** that the court's March 8, 2017 decision to dismiss all claims in case number 24-C-16-006500 is currently pending appellate review in the Court of Special Appeals, and it is further

**FOUND** that the principles of *res judicata* apply to bar action in the matter currently pending in this court, based upon the final judgment issued in case number 24-C-16-006500 and the fact that the matter is currently pending appellate review, and it is further

**FOUND** that the application of the statute of limitations may serve to bar the instant action if it is treated as a "new" claim rather than the "reopening" of the original claim as Plaintiffs assert that it is, and it is further

**FOUND** that no protective action in this matter will preserve the claims if, in fact, the limitations period has expired on the substantive claim, and it is further

**FOUND** that the Plaintiff[s] may be successful in preserving the underlying claim through litigation of case number 24-C-16-006500 in the appellate court.

The court then ordered, as follows:

**ORDERED** that Plaintiff's [sic] Motion to Stay [] is **DENIED**, and it is further

**ORDERED** that the Defendant's [sic] Motion to Strike [], which this Court shall treat as a Motion to Dismiss, is **GRANTED** on the basis of *res judicata*.

Mr. and Mrs. Dunham appealed the dismissal of *Dunham II*, which was consolidated with the appeal of *Dunham I*.

## STANDARD OF REVIEW

Our review of the court's decision in this case involves the court's grant of motions to dismiss, as well as questions of statutory interpretation, and therefore, our review is *de novo*. *See Breslin v. Powell*, 421 Md. 266, 277 (2011) (where an order "involves an

14

interpretation and application of Maryland statutory and case law," appellate courts "must determine whether the lower court's conclusions are 'legally correct' under a [non-deferential] standard of review.") (quoting *Walter v. Gunter*, 367 Md. 386, 392 (2001)); *Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 173 (2015) ("'We review the grant of a motion to dismiss de novo.'") (quoting *Unger v. Berger*, 214 Md. App. 426, 432 (2013)).

## DISCUSSION

## I.

## Healthcare Malpractice Claims Act

Before addressing appellant's specific contentions on appeal, we address briefly the provisions of the Healthcare Malpractice Claims Act (the "Act"), CJP §§ 3-2A-01 *et seq.* The Act, in general, "governs procedures for all 'claims, suits, and actions . . . by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought.'" *Puppolo v. Adventist Healthcare, Inc.*, 215 Md. App. 517, 526 (2013) (quoting CJP § 3-2A-02(a)(1)). *Accord Retina Grp. of Wash., P.C. v. Crosetto*, __ Md. App. __, No. 2385, Sept. Term, 2016, slip op. at 14 (filed Apr. 27, 2018). To initiate a claim under the Act, "'a person with a medical malpractice claim [must] first file that claim with the Director of the [HCADRO].'" *Walzer v. Osborne*, 395 Md. 563, 575 (2006) (quoting *Edward W. McCready Mem'l Hosp. v. Hauser*, 330 Md. 497, 500-01 (1993)). Within 90 days after filing a claim with the HCADRO, the plaintiff "'must file a certificate of

qualified expert . . . attesting to a defendant's departure from the relevant standards of care which proximately cause the plaintiff's injury.'" *Id.* (quoting *McCready*, 330 Md. at 501). *See* CJP § 3-2A-04(b)(1)(i)1.

After filing the certificate, the plaintiff can waive arbitration and file suit in the circuit court. CJP § 3-2A-06B(b)(1); *Crosetto*, slip op. at 15. As this Court recently explained, however, "[a]lthough the certificate is a condition precedent to filing a medical malpractice case in circuit court, failure to satisfy that condition does not . . . divest the court of subject matter jurisdiction." *Crosetto*, slip op. at 15 n. 9. *Accord Kearney v. Berger*, 416 Md. 628, 660 n.13 (2010) ("We have . . . explicitly rejected the notion that failure to satisfy the [Act's] procedures divests a trial court of subject matter jurisdiction.").

The purpose of the health claims arbitration process and the certificate requirement is "'to weed out non-meritorious claims and reduce the costs of litigation.'" *Crosetto*, slip op. at 16 (quoting *Wilcox v. Orellano*, 443 Md. 177, 184 (2015)). *Accord Carroll v. Konits*, 400 Md. 167, 176 (2007) (the statute is "an attempt by the General Assembly, in substantial part, to limit the filing of frivolous malpractice claims."); *Puppolo*, 215 Md. App. at 531 ("The purpose of the HCMCA is to 'weed out' unmeritorious malpractice claims.") (quoting *D'Angelo v. St. Agnes Healthcare, Inc.*, 157 Md. App. 631, 645 (2004)). Accordingly, the plaintiff's "certificate of qualified expert must include information necessary for evaluating whether the defendant breached the standard of care." *Kearney*, 416 Md. at 651. It must "mention explicitly the name of the licensed professional who allegedly breached the standard of care." *Carroll*, 400 Md. at 196. *Accord Crosetto*, slip

16

op. at 17 (the certificate must identify with specificity the licensed professional(s) who breached the standard of care).

Requiring a medical malpractice claimant to identify the health care providers who allegedly provided deficient care is both "consistent with the General Assembly's intent to avoid non-meritorious claims" and "reasonable because the Certificate would be rendered useless without an identification of the allegedly negligent parties." *Carroll*, 400 Md. at 196. "When a Certificate does not identify, with some specificity, the person whose actions should be evaluated, it would be impossible for the opposing party, the HCADRO, and the courts to evaluate whether a physician, or a particular physician out of several, breached the standard of care." *Id.* The "'failure to file a proper certificate is tantamount to not having filed a certificate at all.'" *Puppolo*, 215 Md. App. at 532 (quoting *D'Angelo*, 157 Md. App. at 645).

If a plaintiff fails to file an expert's certificate, as required, the Act mandates dismissal, without prejudice, "'unless the plaintiff obtains one of three statutory extensions of the time to file an expert's certificate.'" *Walzer*, 395 Md. at 575-76 (quoting *McCready*, 330 Md. at 501). Two statutory provisions involve an extension based on "good cause."[9]

---

[9] CJP § 3-2A-04(b)(5) states that "[a]n extension of the time allowed for filing a certificate of a qualified expert under this subsection shall be granted for good cause shown." CJP § 3-2A-05(j) provides: "Except for time limitations pertaining to the filing of a claim or response, the Director or the panel chairman, for good cause shown, may lengthen or shorten the time limitations prescribed in subsections (b) and (g) of this section and § 3-2A-04 of this subtitle." The Dunhams did not seek an extension in the circuit court based on either of these provisions.

17

The extension the Dunhams sought in circuit court was pursuant to CJP § 3-2A-04(b), which provides, in pertinent part, as follows:

> Unless the sole issue in the claim is lack of informed consent:
>
> (1) (i)  1.     Except as provided in item (ii) of this paragraph, a claim or action filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint;
>
> * * *
>
> (ii)     In lieu of dismissing the claim or action, the panel chairman or the court shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if:
>
> 1.     The limitations period applicable to the claim or action has expired; and
>
> 2.     The failure to file the certificate was neither willful nor the result of gross negligence.

CJP § 3-2A-04(b).

## II.

### *Dunham I*

Mr. and Mrs. Dunham contend that the circuit court erred in dismissing *Dunham I*. In support, they make two arguments. First, they argue that "Maryland law does not require a certificate of qualified expert to name an individual, licensed health care provider when allegations involve direct corporate liability." Second, they argue that the Act does not

18

require a certificate "to identify specific agents when a defendant is an institutional agency."

Appellees disagree. They contend that the court properly dismissed *Dunham I*.

## A.

## Direct Corporate Liability

The Dunhams argue that "a hospital can be directly negligent for the care administered to its patients," and pursuant to the doctrine of "corporate negligence," a hospital may be liable without "a showing of negligence of any heath care provider." Accordingly, they assert that they "should not be required to name a licensed, individual provider in their [certificate] when their negligence claim does not rely upon the actions or inactions of an individual, licensed provider."

Appellees contend that the Dunhams "waived their claim that the appellees' alleged negligence involve[d] direct corporate liability [because] it was not raised below." In any event, they assert that the complaint did not allege corporate actions as the basis for their claims, but rather, the claim was "grounded on a theory of vicarious liability based on the alleged breach in the nursing standards of care." Appellees argue that dismissal was appropriate because neither the complaint nor the certificate alleged acts of negligence on the part of appellees "separate and apart from the alleged breaches of the standard of care of Appellees' 'agents, servants and/or employees.'"

We address first appellees' claim that Mr. and Mrs. Dunham waived their claim that they alleged direct corporate liability because it was not raised below. The Dunhams

19

dispute this contention, alleging that they did argue below that the hospitals could face independent liability where no individual licensed professional faced liability.

Maryland Rule 8-131(a) provides that, "[o]rdinarily, the appellate court will not decide any . . . issue unless it plainly appears by the record to have been raised in or decided by the trial court." "The application of the rule limiting the scope of appellate review to those issues and arguments raised in the court below 'is a matter of basic fairness to the trial court and to opposing counsel, as well as being fundamental to the proper administration of justice.'" *In re Kaleb K.*, 390 Md. 502, 513 (2006) (quoting *Medley v. State*, 52 Md. App. 225, 231 (1982)). *Accord Alexis v. State*, 209 Md. App. 630, 667, *aff'd*, 437 Md. 457 (2014). Therefore, "if a party fails to raise a particular issue in the trial court, . . . the general rule is that he or she waives the issue on appeal." *Nalls v. State*, 437 Md. 674, 690 (2014).

Here, as appellees note, the premise of appellees' liability was grounded in the theory of vicarious liability. For example, in the certificate, Dr. Gasparis attested that appellees, "**through their agents, servants, and/or employees**, breached the applicable standard of care." (Emphasis added). In their complaint, Mr. and Mrs. Dunham alleged that the "**actions and inactions** of the [appellees], **through their agents, servants, and employees**, breached the applicable standards of nursing care," and, as a result, appellees, "**acting through** their agents, servants and employees," harmed Mr. Dunham. (Emphasis added).

20

At the hearing on the motion to dismiss *Dunham I*, counsel for the Dunhams did not argue that the certificate was proper because the claim was one of direct negligence against appellees. To be sure, counsel for the Dunhams stated at the hearing that an institution could have faulty policies. In response to a question by the court regarding whether the claim would have to be the failure of a physician, a health care provider, however, counsel did not disagree. Instead, he stated that the people usually responsible for the injuries that Mr. Dunham suffered are nurses. And in the Dunhams' opposition to the motion to strike the certificate, they argued that appellees' reliance on *Carroll*, 400 Md. 167, to assert that specific individuals must be identified in the certificate and report, was misplaced because that case "did not involve any institutional defendants and did not involve any claims of **vicarious liability**." (Emphasis added). The Dunhams did not argue below that their certificate was adequate because they were asserting claims of direct negligence against appellees, and therefore, this claim is not preserved for this Court's review.

Moreover, although the issue of direct corporate liability of a hospital is an interesting and novel one, the complaint, certificate, and report here all alleged that appellees breached their standard of care through the actions or inactions of their agents, servants, and employees.[10] *See Crosetto*, slip op. at 24 (allegations against the organization

---

[10] Mr. and Mrs. Dunham assert in their brief on appeal that the certificate and report "contained numerous allegations of direct negligence against Appellees." In support, they point to Dr. Gasparis' "specific criticisms," including: "[The Defendants] breached the standard of care in failing to recognize Mr. Dunham's high risk for developing pressure ulcers." The report, however, in the portion that the Dunhams refer to as "[The Defendants]," actually states: "Health Care Providers, University of Maryland Medical

21

were based on *respondeat superior* and did not assert that the entity itself committed medical malpractice). Accordingly, we agree with appellees that this issue is not properly before this Court for review.

**B.**

**Vicarious Liability**

Mr. and Mrs. Dunham next contend that "Maryland law does not require naming specific health care providers in a [certificate] for agency purposes when institutional defendants are properly named." They assert that "no subsection of [CJP] § 3-2A-04(b) addresses any requirement concerning the naming of individual, licensed health care providers in a [certificate] or [r]eport."

The Maryland appellate cases, however, have made clear that a certificate must "mention explicitly the name of the licensed professional who allegedly breached the standard of care." *Carroll*, 400 Md. at 196. *Accord Crosetto*, slip op. at 17 (certificate must identify with specificity the licensed professional(s) who breached the standard of care). *See also Barber v. Catholic Health Initiatives, Inc.* 180 Md. App. 409, 423-24, 434 (certificate using the term "Health Care Providers" was sufficient where each defendant was listed individually on the claim form and statement of claim, which then defined them collectively as "Health Care Providers," and therefore, "[w]hen read with the Statement of

Center, LLC, Maryland General Hospital, Inc, d/b/a University of Maryland Medical Center Midtown Campus, and the University of Maryland Medical System Corporation, **through their agents, servants and/or employees**." (Emphasis added).

22

Claim, the [c]ertificate unequivocally identified" the health care providers, physicians and entities that violated the standard of care), *cert. denied*, 406 Md. 192 (2008).

Here, the certificate filed with the statement of claim in *Dunham I* stated that appellees, acting through their agents, servants, or employees, breached the standard of care, but it did not specifically identify any individuals who breached the standard of care. Without more detail regarding the licensed professionals who allegedly breached the standard of care, thereby making appellees vicariously liable, the certificate did not contain the "information necessary for evaluating whether the defendant breached the standard of care." *Kearney*, 416 Md. at 651.

Mr. and Mrs. Dunham contend that "a certificate of qualified expert and report are not a substitute for discovery," and therefore, "only minimal detail is required." The Court of Appeals, however, has explained that, "[e]ven if Petitioners could have conducted discovery in lieu of Respondent's filing of an attesting expert report, that fact does not modify the clear legislative policy of weeding out non-meritorious claims and reducing the cost of litigation." *Walzer*, 395 Md. at 583. Thus, a complete and valid certificate and report must be filed to maintain a medical malpractice action in accordance with "the meaning and intention of the Legislature." *Id.* at 584. It is, as the Court of Appeals has explained, an "indispensable step." *Carroll*, 400 Md. at 181. And to satisfy this step, a plaintiff must "identify, with some specificity, the person whose actions should be evaluated." *Id.* at 196. *Accord Crosetto*, slip op. at 21. The circuit court properly determined that Mr. and Mrs. Dunham failed to do so with their initial certificate.

23

## III.

## 90-Day Extension

Mr. and Mrs. Dunham contend that, even if the certificate in *Dunham I* was deficient, the circuit court erred by failing to grant them a 90-day mandatory extension to file a proper certificate in lieu of dismissing the case. They assert that, by dismissing the case, the court violated CJP § 3-2A-04(b)(1)(ii), which they refer to as "the savings statute." Mr. and Mrs. Dunham contend that, pursuant to the savings statute, the court was "mandated to give [them] an extension of no more than 90 days to file an appropriate certificate," asserting that the extension set forth therein "is awarded to plaintiffs as a matter of right and is not discretionary."

Appellees disagree. They contend that "an extension to file a valid [certificate] in the trial court was not an option in this instance because [Mr. and Mrs. Dunham] *did* in fact file a [certificate] within 90 days of filing their Statement of Claim" and the savings statute "applies only when *no* [certificate] has been filed."

CJP § 3-2A-04(b)(1)(ii) states, in pertinent part:

> (ii) **In lieu of dismissing the claim or action,** the panel chairman or **the court shall grant an extension of no more than 90 days** for filing the certificate required by this paragraph, if:
>
> 1. The limitations period applicable to the claim or action has expired; and

24

2. The failure to file the certificate was neither willful nor the result of gross negligence.

(Emphasis added).

Here, after the court concluded that Mr. and Mrs. Dunham had filed a deficient certificate, it considered their request for an extension under CJP § 3-2A-04(b)(1)(ii) of "no more than 90 days" to cure the deficiency. Although the court acknowledged that this Court had stated in *Puppolo*, 215 Md. App. at 532 (quoting *D'Angelo*, 157 Md. App. at 645), that "'the failure to file a proper certificate is tantamount to not having filed a certificate at all,'" it concluded that, "to apply CJP [§ 3-2A-04(b)(1)(ii)] under the circumstances would not be consistent with what this [c]ourt believes was the intention of the legislature" because it would give the plaintiff the opportunity to file a bare certificate and then "ask for a do over." Accordingly, the court granted the motion to dismiss without giving the Dunhams an extension to file an adequate certificate.

To determine whether appellants are correct that, pursuant to the statute, the court was "mandated to give plaintiffs an extension of no more than 90 days to file an appropriate certificate," we must apply well-settled rules of statutory construction:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.
>
> To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction. We neither add nor

25

delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.

*State v. Bey*, 452 Md. 255, 265 (2017) (quoting *State v. Johnson*, 415 Md. 413, 421–22 (2010)).  In interpreting a statute, we give it a "reasonable interpretation, not one that is absurd, illogical or incompatible with common sense." *Id.* at 266.

The statute, as written, expressly states that, "[i]n lieu of dismissing the claim or action," "the court shall grant an extension of no more than 90 days for filing the certificate required," if the requisite conditions are shown, i.e., the limitations period has expired and the failure to file the certificate was neither willful nor the result of gross negligence.  CJP § 3-2A-04(b)(1)(ii).[11]  Initially, we note that, prior to 2004, CJP § 3-2A-04(b)(1)(ii) limited the power to grant an extension to the panel chairman of the HCADRO.  In 2004, however, the General Assembly amended the statute to authorize "the court" to approve the 90-day extension.  *Barber v. Catholic Health Initiatives, Inc.*, 174 Md. App. 314, 334, n. 12 (2007).[12]

---

[11] Here, there is no dispute that, at the time of the request, the limitations period had expired.  According to the complaint, Mr. Dunham was released from the hospital on February 6, 2014, with open wounds, and the request for an extension to file a new certificate was made on February 17, 2017, more than three years later.  *See* CJP § 5-109(a) (a medical malpractice claim must be filed within the earlier of "(1) [f]ive years of the time the injury was committed; or (2) [t]hree years of the date the injury was discovered.").

[12] *Barber v. Catholic Health Initiatives, Inc.*, 174 Md. App. 314 (2007) ["*Barber I*"], was vacated by the Court of Appeals and remanded to this Court to be reconsidered in light of the decision in *Carroll v. Konits*, 400 Md. 167 (2007). This Court did so and found that *Carroll* was distinguishable and did not require a different result.  *Barber v. Catholic Health Initiatives, Inc.*, 180 Md. App. 409, 426 (2008) ["*Barber II*"].

Moreover, the statute provides that the court "shall" grant an extension if the requisite conditions are shown. We agree with the Dunhams that the word "shall" denotes mandatory action. The term is defined as "[h]as a duty to; more broadly, is required to." *Black's Law Dictionary* 1407 (8th ed. 2004). As the Court of Appeals has explained:

> The term "shall" is [] unambiguous. It remains a well-settled principle of this Court that "[w]hen a legislative body commands that something be done, using words such as 'shall' or 'must,' rather than 'may' or 'should,' we must assume, absent some evidence to the contrary, that it was serious and that it meant for the thing to be done in the manner it directed."

*Walzer*, 395 Md. at 580 (quoting *Thanos v. State*, 332 Md. 511, 522 (1993)). Indeed, the Court of Appeals in *McCready*, 330 Md. at 510, interpreted the use of the language "shall grant an extension" as indicating an intent that, not only is it mandatory to grant an extension, but such an extension "be granted automatically in lieu of dismissal," subject to a defendant's motion to dismiss on the grounds that the claimant's failure to file the expert's certificate within the first 90 days was grossly negligent or willful."

In *McCready*, 330 Md. at 508, the Court of Appeals discussed in detail how the 90-day extension set forth in CJP § 3-2A-04(b)(1)(ii) operates. In that case, the claimants filed a claim with the HCADRO five days before the statute of limitations was to run. *Id.* at 501. Although the claim was timely filed, they failed to timely file a certificate within the 90-day period. *Id.* at 502. The defendants filed motions to dismiss based on the failure to file a certificate, and 111 days after filing their claim, the claimants requested a 90-day extension under CJP § 3-2A-04(b)(1)(ii). *Id.* The HCADRO "did not take any immediate action on the request," but it scheduled a hearing. *Id.* at 503. Following a hearing (217

27

days after filing the claim), the HCADRO dismissed the claim for failure to file a certificate or request an extension within the initial 90-day period following the filing of their claim. *Id.*

The claimants, who still had not filed the required certificate, instituted a court action to nullify the HCADRO's order, asserting that CJP "§ 3-2A-04(b)(1)(ii) created a mandatory extension for filing an expert's certificate and that the Panel Chair therefore erred in failing to grant their request for such an extension." *Id.* The Court of Appeals agreed that the extension was mandatory and, as indicated, it determined that the extension was automatic. *Id.* at 510. It explained that the limitation of the extension to "no more than 90 days" indicated that

> the General Assembly intended to create a limited 90–day extension that commences immediately and automatically upon the expiration of the initial 90–day period. The reason for the time limit is obvious—for subparagraph (b)(1)(ii) claimants, the statute of limitations has run and the claimants have already had a considerable period of time to prepare their claims. In contrast to the "good cause" extensions under §§ 3–2A–04(b)(5) and 3–2A–05(j), subparagraph (b)(1)(ii) gives claimants in a limited set of circumstances up to 180 days to file an expert's certificate without the need to prove "good cause."

*Id.* at 511. The Court noted that, although the claimants had filed a request for an extension, "a bare request for an extension does not toll the second 90-day time period under § 3-2A-04(b)(1)(ii)." *Id.* at 513. The Court held that, "[w]here a claimant seeks a § 3–2A–04(b)(1)(ii) extension, it must file the expert's certificate within the second 90–day period, *i.e.,* within 180 days from the initial filing of the claim." *Id.* Because the claimants in that

28

case had not filed their certificate within the 180-day period provided in the statute, their claim was correctly dismissed. *Id.* at 513.

Based on the language of CJP § 3-2A-04(b)(1)(ii), and the case law, we hold that, where a plaintiff fails to file the certificate required by § 3-2A-04, and certain conditions exist, the court is **required** to grant an extension to file the requisite certificate, "[i]n lieu of dismissing" the action. The conditions that must exist for the mandatory extension are: (1) the limitations period has expired; (2) there has been no assertion by the defense, and finding by the court, that the failure to file the requisite certificate was grossly negligent or willful; and (3) no more than 180 days have passed since the claim was filed.

Here, there is no dispute that the limitations period had expired, and there was no allegation before the court in this case that the failure to file the requisite certificate was grossly negligent or willful. And, as discussed *infra*, the request for an extension was made within 180 days of the filing of the claim.

Appellees argue, however, that this mandatory extension "applies only when *no* [certificate] has been filed." Because Mr. and Mrs. Dunham had filed a certificate, albeit an insufficient one, appellees assert that an extension was not required. We disagree.

The Maryland appellate courts have stated repeatedly that the "'failure to file a proper certificate is tantamount to not having filed a certificate at all.'" *Walzer*, 395 Md. at 582 (quoting *D'Angelo*, 157 Md. App. at 645). In *Breslin*, 421 Md. at 292, the Court of Appeals addressed the argument whether, in the circumstance where the plaintiff, similar to the Dunhams, filed a timely, but deficient, certificate, summary judgment was the proper

remedy. Dr. Breslin argued, similar to the argument in this case, that dismissal without prejudice applied only in circumstances where there was a failure to file a certificate, i.e., the plaintiff "does not file a certificate at all." *Id.* The Court of Appeals disagreed, stating:

> We imagine several ways in which a plaintiff could "fail to file a certificate of qualified expert," including but not limited to: (1) not filing a certificate at all; (2) filing a certificate of an unqualified expert who does not have the requisite training; (3) filing a certificate of an otherwise qualified expert who devotes more than twenty percent of his professional activities to testimony in personal injury cases; or (4) filing a certificate of a qualified expert that does not include the required report. These and other ways in which a claimant or plaintiff can "fail to file" are not distinguished in the statute.

*Id.* at 292-93. The Court agreed with our statement in *D'Angelo*, 157 Md. App. at 645, that "failure to file a proper certificate is tantamount to not having filed a certificate at all." *Breslin*, 421 Md. at 292-93. Accordingly, the Court held that, pursuant to the plain language of the Act, "dismissal *without* prejudice of the underlying claim for the filing of a non-compliant Certificate, regardless of the particular qualification or requirement the Certificate or its attestor fails to meet," is required. *Id.* at 270.[13]

Applying this analysis to the present case, the Dunhams' filing of a non-compliant certificate amounted to a failure to file a certificate pursuant to CJP § 3-2A-04(b)(1)(i). Pursuant to § 3-2A-04(b)(1)(ii), the circuit court was required to grant them an extension of no more than 90 days to file the certificate required, in lieu of dismissing the action. The court erred when it dismissed *Dunham I* without permitting Mr. and Mrs. Dunham an extension to file a proper certificate. Accordingly, we shall vacate the order of the circuit

---

[13] The mandatory extension provision was not at issue in that case.

30

court with instructions to grant the Dunhams an extension to file a certificate that satisfies the requirements of the Act.

A question remains, however, regarding the allotted time for an extension under CJP § 3-2A-04(b)(1)(ii). As indicated, the Court in *McCready*, 330 Md. at 512, held that the 90-day extension available under CJP § 3-2A-04(b)(1)(ii) permits an extension for filing a proper certificate only up to 180 days from the date the claimant filed the claim with the HCADRO.

Here, a 90-day extension to file a proper certificate was automatically available to the Dunhams. Based on the date they filed their claim with the HCADRO, October 14, 2016, the 180-day deadline to do so was April 12, 2017. Prior to that time, on March 8, 2017, the circuit court erroneously dismissed *Dunham I*, terminating the case and preventing the Dunhams from properly filing a revised certificate in this case.[14] Accordingly, on remand, upon the circuit court's order granting an extension, the Dunhams

---

[14] Although the Dunhams did file a new certificate using the same claim number as the case that was dismissed, they do not cite any authority permitting them to do so. The case law indicates that, once a case is dismissed for failure to comply with the filing process, the claimant has the "opportunity to begin the process a new." *Walzer v. Osborne*, 395 Md. 563, 584 (2006). "Anew" means "in a new or different form." Merriam-Webster's Collegiate Dictionary 47 (11th ed. 2003). *See also Puppolo*, 215 Md. App. at 524 (after the initial complaint against the institutional defendant was dismissed, the plaintiff refiled her claim in the HCADRO, waived arbitration, transferring the claim to court, where it was consolidated with the initial complaint still pending against the individual physician-defendant). In any event, if the Dunhams had been able, as they allege, to file the new certificate in the initial action, the filing on April 24, 2017, 192 days after they filed their initial claim, was outside the 180-day deadline, and therefore, untimely.

will have 35 days to file a proper certificate, the number of days that remained in the 180-day period when the court dismissed the case.[15]

## IV.

### *Dunham II*

As indicated, after *Dunham I* was dismissed, in addition to filing an appeal contesting the propriety of its dismissal, the Dunhams also reopened the statement of claim of *Dunham I* in the HCADRO to seek an extension of time to file a proper certificate. The HCADRO granted them a 60-day extension to file a proper certificate, and after the second certificate was filed, the claim was transferred to circuit court, which dismissed the action. The Dunhams allege in this consolidated appeal that the court erred in dismissing *Dunham II*.

Because the underlying claims in *Dunham I* and *Dunham II* are the same, and we have granted the Dunhams relief in *Dunham I*, their claims with respect to *Dunham II* are moot. *See R.J. Reynolds Tobacco Co. v. Stidham*, 448 Md. 497, 515 (2016) ("An appeal is moot where there is no longer an existing controversy when the case comes before the Court or when there is no longer an effective remedy the Court could grant."). *See also Clark v. O'Malley*, 434 Md. 171, 197 (2013) (where the Court affirmed the grant of summary judgment, and therefore, there would be no trial or records to be introduced into

___

[15] We express no opinion whether the revised certificate filed with the HCADRO on April 24, 2017, complies with the requirements of the Act.

32

evidence, the issue whether the motion to intervene to have certain records sealed was properly denied as moot).  Accordingly, we will dismiss the appeal in *Dunham II*.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AS TO *DUNHAM I* VACATED AND REMANDED WITH INSTRUCTIONS FOR THE CIRCUIT COURT TO GIVE APPELLANTS 35 DAYS TO FILE A PROPER CERTIFICATE. APPEAL IN *DUNHAM II* DISMISSED AS MOOT.  COSTS TO BE PAID 50% BY APPELLANTS AND 50% BY APPELLEES.**

33